THE WILMINGTON CANDY COMPANY, a corporation of the State of Delaware, vs. REMINGTON MACHINE COMPANY, a corporation of the State of Delaware.

*Case—Contract—Breach of Warranty—Ice Making and Refrigerating Plants—Evidence—Custom of Doing Business, Method of—Test of Machine—Lapse of Time—Changes—What Plaintiff Must Prove—Unreasonable Time— Measure of Damages.*

1. In an action for breach of warranty of an ice making and refrigerating plant installed by defendant for plaintiff, where the business to be done was the making ot candy, the plaintiff cannot prove the custom of candy manufacturers with respect to the manufacturer, but may show the plaintiff's method of making it.

2. The plaintiff cannot show the result of the test of the warranted machine made by an expert after it had been used fifteen months, and after it had been changed by the plaintiff both in its parts and in the system by which it was operated.

3. The defendant having asked the court to instruct the jury to return a verdict for the defendant because the declaration alleged a breach of the contract in not building the plant according to specifications as distinguished from a declaration upon the express warranty, the court refused to give such instruction inasmuch as the pleadings showed that the declaration was upon the warranty.

4. If the plant, at the time it was installed was first class in every respect, capable of doing the work it was warranted to do, when operated in accordance with the instructions of the defendant, the terms of the contract and warranty were met.

5. In constructing and installing the plant, it was the duty of the defendant to avail itself of any and all knowledge it actually had or ought to have had, by inspection, information or otherwise, of the character of the buildings and place in which the plant was to be located, of the purpose for which it was to be used in connection with the business of the plaintiff as manufacturer of candy, of the conditions which surrounded the plant and under which it was to be operated. The law presumes the defendant was possessed of the requisite knowledge to perform the work it undertook, in contemplation of such conditions and surroundings.

6. If the failure of the plant to perform the work warranted was caused by the incompetency fault or negligence of the plaintiff, by the failure to follow the instructions of the defendant, or to do the work properly that was required to be done as a condition precedent, the plaintiff cannot recover.

7. If there was a failure for an unreasonable time on the part of the plaintiff to notify the defendant of the alleged defects in the plant, such failure may be considered by the jury, in connection with all the other evidence, for what it is reasonably worth, as tending to rebut the existence of such alleged defects.

8. To recover, the plaintiff must prove a breach of the warranty declared upon by a preponderance of the evidence.

9. If the jury should find for the plaintiff, the measure of damages would be the difference between the value of the plant as it was actually installed, and what its value would have been if it had been installed according to the warranty, together with any expenditures made by the plaintiff which were necessary, and actually incurred, by reason of the defects or insufficiency of the plant, under the terms of the warranty.

*(December 14, 1905—January 6, 1906.)*

WIL. CANDY CO. vs. REM. MACH. CO.5     545

EVIDENCE.

Lore, C. J., and Grubb and Pennewill, J. J., sitting.

*John W. Brady* and *John F. Neary* for plaintiff.

*J. Harvey Whiteman* and *Victor B. Woolley* for defendant.

Superior Court, New Castle County, November Term, 1906.

Action of trespass on the case (No. 124, May Term, 1904), to recover for an alleged failure to perform its warranty of an ice-making and refrigerating plant furnished by the defendant to the plaintiff.—See further facts in the charge to the jury.

At the trial, Joseph Riggi, an expert candy maker and superintendent of the plaintiff at the time of the installation of the said plant, was produced as a witness on behalf of the plaintiff and questioned as follows:

*By Mr. Brady:*

Q. What is the custom of candy factories with respect to bringing hot chocolate to the coating room?

(Objected to by Mr. Woolley, of counsel for defendant, as irrelevant, there being nothing in the contract relating to a chocolate room or indicating that the defendant undertook to cool, chill or refrigerate a chocolate room, and therefore any answer that the witness might give as to the custom in the chocolate business would have no bearing upon a contract such as signed by the parties to this suit and could not bind the defendant in the face of the covenants he undertook as specified in the contract.)

Lore, C. J.:—We think the matter of custom is irrelevant as it appears to us just now. You may show the actual conditions of the room there and whether these defendants may have reasonably contemplated the conditions stated by the plaintiff, or that they were brought to their notice.

Q. What is the custom with respect to the Wilmington

Candy Company as to the bringing of hot chocolate into their coating room?

(Objected to by Mr. Woolley, of counsel for defendant, on the same grounds as above stated, and on the further ground that it is a special custom and not a general custom of the trade, and certainly such custom the defendant company could not know.)

*Mr. Brady:*—We propose to show that the representatives of the defendant came to this factory, that they came there during working hours, that there is a regular method of cooling chocolates in that coating room and they either saw or ought to have known of that custom.

LORE, C. J.:—We think you can show these conditions, but that is not a question of custom.

GRUBB, J.:—Show the method, but not the custom of cooling it.

Q. What was the method with respect to bringing warm chocolate into the coating room of the Wilmington Candy Company, prior to the making of the contract?

(Objected to by Mr. Woolley, of counsel for defendant, on the same grounds as before stated to the same line of testimony.)

*Mr. Neary:*—We claim that we ought to be allowed to prove what is the usual and ordinary business method used in the cooling room there and that that business was carried on in that room; not that these particular things were called to the attention of the defendant.

GRUBB, J.:—A majority of the Court think that this line of testimony is admissible, and I will state the particular ground upon which we rule it in.

It has been shown by the evidence that the defendant entered into a contract with the plaintiff knowing that the latter was engaged in the manufacture of candy, to make this machine for the

WIL. CANDY CO. vs. REM. MACH. CO.     547

OPINIONS.

proper purpose of the candy manufacturer in its establishment. The defendant is bound therefore, if this contract was to apply to that business, to know whatever it could ascertain in a reasonable way and with reasonable diligence. It is bound to know that which it could reasonably have known. When it knew that the plaintiff wanted this machine for the purpose of manufacturing candy, and had actually been there and examined the establishment before the contract was made, it must have known, or at least will be held to have known—because it is very reasonable that it should have known—that the plaintiff manufactured chocolate among other candies or confections. Therefore the plaintiff, in the opinion of a majority of the Court, has the right to show that while it was manufacturing chocolate, it manufactured it by a particular method and did use whatever appliances, means or methods were necessary in the proper manufacture of chocolates; and the plaintiff is seeking now to show that the method it employed was a proper one, and one that was generally employed in the trade in the manufacture of that kind and quality of chocolate. We think the plaintiff can put that evidence in for that purpose.

Of course the Remington Company, in its defense, either by cross examination or by witnesses of its own, may show that the methods and appliances used by the plaintiff, the heat or other things, were not proper to be used in a candy establishment in the manufacture of the chocolates in question.

LORE, C. J. (dissenting):—I am unable to agree to the decision of the majority of the Court, for this reason: While I think the defendant company was bound to construct the machine with a view to all the reasonable and proper purposes for the manufacture of candy, or of the business in which the plaintiff was engaged, yet it does not seem to me that the defendant is bound to know the particular manner of the plaintiff's using that for a particular purpose, unless the defendant is either advised of that or the circumstances are such that it must or ought to take notice. In my opinion, it is too remote.

A majority of the Court hold that the question is admissible.

*Jay M. Whitham,* a witness for plaintiff, having proved that he was an expert mechanical engineer of large experience, was questioned as follows:

*By Mr. Neary:*

Q. Have you specially studied the contract between the Remington Machine Company and the Wilmington Candy Company as an engineer, with a view to ascertain whether or not the contractor could perform and did perform the terms of the warranty? A. I have.

Q. Before making your test of the ice and refrigerating plant at the Wilmington Candy Company, did you ascertain whether or not the ice and refrigerating plant was in a proper condition for testing and examination? A. I did.

Q. Explain what preparations you made in order to insure that the said ice and refrigerating plant could and would be properly operated and examined when tested by you? A. I examined the interior of the working cylinders of the compressor, that is the steam end and the compressor end. I tested the system for air binding and the ammonia lines for air binding. I tested the quality of the ammonia to see whether there were any impurities in it, and I tested the strength of the brine in the brine tank, and I also made sure that the line which I understand was put in and which would take brine over to the ice cream room was shut off and that the circulation existed in all the coils of the wafer and chocolate rooms and in the brine tank.

Q. Why was it important for you to make those preliminary tests? A. In order to make sure that the plant was in proper working condition.

Q. Did you find the plant in proper working condition? A. I did.

Q. By your preliminary examination? A. I did.

Q. Give in a general way the result of your examination

EVIDENCE.

and test of the ice and refrigerating plant as installed by the Remington Company in the Wilmington Candy factory, stating whether or not the tests and examination showed a performance of the warranty by the contractor?

(Objected to by counsel for defendant, on the ground that the testimony offered by the plaintiff showed that the machine at the time of the test, which was about fifteen months after the installation of the machine, had been changed in various important particulars, and furthermore that the lapse of time from the installation to the time of the test, during which time the machine had been proven to have been operated more or less constantly, would result in such wear and tear upon the machine that it could not in the nature of things be in the same condition as it was at the time of the installation, and that therefore the evidence was inadmissible and irrelevant to the issues in the case; citing the decision of the Court upon a similar point in the unreported case of *Sam Bowring vs. Wilmington Malleable Iron Company*, at the May Term of Court for New Castle County, 1905.)

BY CHIEF JUSTICE LORE:

Q.   Mr. Whitham, did you hear the testimony of Mr. Bickta?
A.  Yes, sir.
Q.   And you base your opinion upon that as you heard it?
A.  Yes, sir.

PENNEWILL, J.:—Inasmuch as I am the only member of the Court now sitting who sat in the Bowring case referred to by Mr. Whiteman, I wish to say that from my recollection of that case the question raised there was in principle the same as the question now before us; that is, whether an expert or anyone else could testify as to the condition of a machine, or to the perfect working of a machine, from an examination which he had made, unless the machine was in the same condition then that it was in at the time of the accident; and it having been shown in that case that there had been

some changes of substantial character, and in addition thereto it appearing that the machine had been operated for a period of more than a year since the injury happened, we thought under the circumstances, the condition was not the same and therefore we ruled that question out.

The question, after all, is whether the conditions are substantially the same. The Court did not lay down anything new in that case. I have never known the Court to hold otherwise. The conditions must be substantially the same at the time of the test as at the time of the injury.

LORE, C. J.:—Which of these changes do you admit, Mr. Neary, were made prior to this test?

*Mr. Neary:*—We admit that there was a Snow pump put in for a Dean Pump, and the testimony shows that that was a benefit; we admit that there were steam jets put in for gas jets, and we say that that is a benefit rather than a detriment. We admit that there was a change of the system in March by tapping one pipe leading to the brine tank and by that change the circulation of brine was used for the cooling instead of ice, but the testimony is that they put a pipe in there and tapped it with a T and put a valve there within six inches of that pipe, and the testimony of the witness is that at the time of the test that valve was shut off and there was brine circulating in there only for six inches. As to everything else, the machine was in the same condition. We claim that we do not have to show exact conditions, but only similar conditions.

The case cited, while the principle might be the same, was an action of tort, while this is an action on a contract. An accident happened under certain fixed conditions, and to admit testimony of a test which occurred a year afterwards under admittedly different conditions is a point that differentiates that case from this.

I think that the true test of all these questions of experiment is whether the evidence if left to the jury would assist the jury in bringing in an intelligent verdict.

GRUBB, J.:—This is an action to recover damages for the breach of a contract. The alleged contract is that the defendants undertook to furnish to the plaintiff this ice machine to cool the rooms and make a ton of ice in twelve hours, and they entered into that warranty, in which there is no limitation as to the continuance of the warranty ; that the machine, in other words, should work as long as machines of that kind ought to work. That is to be implied necessarily from the terms of the contract; not that the machine should run forever despite the laws of nature, for it would wear out in the natural order of things.

Now here is a contract that they shall furnish this machine according to those specifications, and as I say, there is no time limit as to when the warranty shall end.

They were to furnish a machine that would answer the purposes of machines of this kind. Here comes evidence on the part of the plaintiff that the defendant did not furnish such a machine. That leads to the question of natural wear and tear. They contend that they can show the result of a test they made to the jury, and that it is for them to determine whether the natural wear and tear interfered with the operation of the machine and that it is for them to say what effect these changes had upon it. But here is what I was coming to; they have undertaken to show by this witness (and all the facts stated by their witnesses, this expert heard) that the machine did not perform its work according to contract and that the defect was in the machine and was not the cause of natural wear and tear; that they had to make certain changes in order to make the machine do the work that it was contracted to do, that is to furnish a ton of ice within twelve hours, and to cool these rooms to the temperature of 65 degrees. Now when they found out that that machine did not work they might have rescinded the contract and returned it. They did not do that, however; they kept the machine. It was there and they are liable to pay and did pay the value of it. In return for that the law will probably hold that they were entitled to keep and operate it and having paid for it, and under the conditions proved that it would not do the work, that

they had a right to change it, and if they show they did change it and did not do anything to the detriment of the machine in changing it, and therefore to the detriment of the defendant, but for the betterment of it and did make it carry out the contract for which it was furnished and warranted, the law gives them the right to show it in an action for damages for breach of the contract. That is the question—whether the law does not give them the right to show this. It makes no difference what inconvenience it may be to the defendant or the plaintiff to show it, that argument could have no weight with us.

LORE, C. J.:—A majority of the Court think that the testimony offered is not admissible; that it is a test made after the machine had been used fifteen months, a test made after the plaintiff himself states that he had made alteration in the parts and in the system; that they tested a different machine from the machine which was installed and delivered to the plaintiff, and which should have been tested.

To get away from that broad principle would lead to the trying of a multitude of issues.

GRUBB, J.:—I dissent.

*Mr. Neary:*—Do I understand the Court rules the testimony out for the reason that the plaintiff had admitted that changes were proved in the system?

LORE, C. J.:—We rule it out for the reason that it was fifteen months after the plant was installed, and that it had been changed by the plaintiff during that time both in its parts and in the system by which it was operated, and that it would introduce a multitude of issues in addition to the one which is a proper one.

LORE, C. J., charging the jury:

Gentlemen of the jury:—The cause you are trying is an action to recover damages for an alleged breach of warranty.

WIL. CANDY CO. vs. REM. MACH. CO.          553

CHARGE.

The Wilmington Candy Company, the plaintiff, claims that Remington Machine Company, the defendant, in the month of May, 1903, furnished and installed at the manufactory of the plaintiff company on Market Street in this city, a refrigerating and ice-making plant, to be used in their business of manufacturing candy under a contract between them.

The warranty contained in the said contract reads as follows: "We guarantee this plant to be first class in every respect, that it will be capable of doing an amount of work equal to the melting of six tons of ice per day of 24 hours when operated in accordance with our instructions, and that while running 12 hours per day it will be capable of making one ton of ice in the tank supplied, and cooling the rooms while in operation, to the temperature required." To this is added the following: "We will agree to supply without charge any parts that may prove defective in workmanship or material within one year from the starting of the plant."

The plaintiff company claims that although it well and truly did and performed all the things required of it, with respect to the installment of said plant under the contract, yet that the plant so installed by the defendant company did not produce the results contemplated in the contract, nor did it meet the warranty in the said contract, in that it was not first class in every respect, and that it did not make a ton of ice and cool the temperature of the rooms as therein specified.

That by reason of the failure of the plant to meet the terms of the warranty, the plant became of little or no value to the plaintiff company, and that by reason thereof also the plaintiff company was compelled to expend a large sum of money in buying ice to supply the quantity the plant should have furnished, and also was compelled to operate the plant for a greater number of hours per day in order to make the specified quantity of ice, and thereby was compelled to and did lay out and expend large sums of money in the purchase of additional coal needed therefor, and also in the employment of additional workmen and servants in operating the plant; all of which it seeks to recover in this action.

The defendant on the other hand claims that the said plant fully met the terms of the warranty; that the alleged failure to produce the results contemplated therein, was caused by the unskillful and negligent operation of the plant by careless and incompetent employees of the plaintiff company.

You will note, that on the part of the plaintiff the contention is that the defect and insufficiency complained of existed in the plant itself; and on the part of the defendant it is contended that such defect and insufficiency were not in the plant itself, but in the manner in which the plant was operated by the plaintiff company. This is the distinct issue.

Counsel for the defendant contend, that the declaration in this case is for an alleged breach of the contract, in not building and furnishing the plant named in the contract according to specifications, as distinguished from a declaration upon the express warranty, which they claim is collateral to the contract. For this reason, under the proof in the case, they have asked that you be instructed to return a verdict for the defendant. This we decline to do as the pleadings show that the declaration is upon the warranty.

The warranty in this case as expressed in the contract is not disputed. It, therefore, limits the questions which you are to determine.

If, therefore, the plant at the time it was installed by the defendant company in the manufactory of the plaintiff company was first class in every respect, capable of doing an amount of work equal to the melting of six tons of ice per day of 24 hours, when operated in accordance with the instructions of the defendant company and while running 12 hours per day was capable of making a a ton of ice in the tank supplied, and cooling the rooms in operation to the temperature required, viz., 65 degrees, the terms of the contract and warranty were met and the defendant would be entitled to your verdict.

In constructing and in installing the plant, it was the duty of the defendant company to avail itself of any and all knowledge it actually had or ought to have had, by inspection, information, or

otherwise, of the character of the buildings and place in which the plant was located; of the purposes for which it was to be used in connection with the business of the plaintiff company as manufacturers of candy; of the conditions which surrounded the plant and under which it was to be operated. The law presumes the defendant company was possessed of the requisite knowledge and skill properly to perform the work it undertook in contemplation of such conditions and surroundings.

If you are satisfied from the evidence that the failure of the plant to perform the work warranted was caused by the incompetency or negligence of the employees of the plaintiff company; or because the instructions of the defendant company were not followed in operating the plant; or because the installation and other work required to be done by the plaintiff company as a condition precedent was insufficient; or generally if you are satisfied that such failure to perform the work guaranteed was caused by the fault or negligence of the plaintiff company,—your verdict should be for the defendant. To render such a verdict, however, for such cause, you should be satisfied that the fault was in the plaintiff company, and not in the plant itself or in the defendant company.

Should you believe from the evidence that there was a failure for an unreasonable time on the part of the plaintiff company to notify the defendant company of the alleged defects in the plant, you may consider that failure, in connection with all the other evidence in the case, for what it is reasonably worth, as tending to rebut the existence of such alleged defects.

To recover in this action, the plaintiff must prove a breach of the warranty declared upon. The burden of proving such breach by a preponderance of the evidence is upon the plaintiff.

If from the evidence you should be satisfied, that the plant as constructed and installed by the defendant company was not capable of performing the work as warranted, at the time it was installed, and when properly operated, and that such incapacity was the result of defects in the construction of the plant, or of its inade-

quacy to meet the conditions of the warranty, your verdict should be for the plaintiff.

If you should find for the plaintiff, your verdict should be for the difference in the value of the plant as it was actually installed, and what its value would have been if it had been installed according to the warranty, and you should add thereto any expenditures made by the plaintiff company for ice, coal, and additional employees and servants which were made necessary, and actually incurred by reason of the defects or insufficiency of the plant, under the terms of the warranty.

Where testimony is conflicting as in this case, it is the duty of the jury to reconcile such testimony if it may be done. If you cannot so reconcile it, you should give credence to the testimony of those witnesses who, under all the circumstances of the case, you deem most entitled to belief.

Verdict for plaintiff for $3367.00.